FILED
JAN 1 7 2019
Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 1:18-cr-00335 (RBW) |
| | : | |
| ARMAN H. AMIRSHAHI, | : | |
| | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, ARMAN AMIRSHAHI (hereinafter, "AMIRSHAHI"), agree and stipulate to the facts presented below. These facts are presented for the purpose of demonstrating there is a factual basis for AMIRSHAHI's guilty plea pursuant to Federal Rule of Criminal Procedure 11, and do not represent all of the evidence that could have been presented at a trial.

1.   At all times relevant to this Statement of Offense, AMIRSHAHI held a part ownership interest in several business entities that operated bars, restaurants and nightclubs in the District of Columbia, including but not limited to Toppromo, Inc. (hereinafter, "Toppromo"), Barcode Corporation (hereinafter, "Barcode Corporation"), and 727 Concept LLC (hereinafter, "727 Concept").

2.   Toppromo was a corporation registered with the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") and located at 911 F Street, Northwest, Washington, D.C. It owned and operated Ultrabar/Chroma (hereinafter, "Ultrabar"), a bar and lounge located at the same address.

3. Barcode Corporation was a corporation registered with the DCRA and located at 1101 17th Street, Northwest, Washington, D.C. It owned and operated Barcode Restaurant, Bar & Lounge (hereinafter, "Barcode"), a restaurant, bar and lounge located at the same address.

4. 727 Concept LLC was a limited liability company registered with DCRA and located at 727 15th Street, Northwest, Washington, D.C. It owned and operated L8, a bar and lounge located at the same address.

5. At all times relevant to this Statement of Offense, Toppromo, Barcode, and 727 Concept were subject to monthly sales and use tax requirements and annual corporate franchise tax requirements administered by the Office of Tax and Revenue (hereinafter, "OTR"), the agency of the District of Columbia government responsible for collecting taxes from individuals and businesses.

6. In August 2015, OTR completed an audit of Toppromo and assessed deficiencies of over $175,000 in sales and use taxes owed for various monthly tax periods from March 2012 to February 2015.

7. AMIRSHAHI discussed the audit of Toppromo with Person A, who was a business associate of AMIRSHAHI. Person A informed AMIRSHAHI that Person B had a connection at OTR who could help Toppromo by reducing the amount of taxes that the company owed. AMIRSHAHI knew Person B, whom he had previously met at DCRA, where Person B told AMIRSHAHI he was working as an expediter and helped AMIRSHAHI obtain at least one business-related permit. AMIRSHAHI agreed to Person A using Person B's assistance to pay a bribe to an OTR employee in exchange for the fraudulent reduction of Toppromo's tax-related liabilities.

8. By late September 2015, AMIRSHAHI knew that as a result of the audit assessment plus penalties and interest, Toppromo's outstanding sales and use tax liabilities exceeded $256,000. On October 8, 2015, AMIRSHAHI received from Person A a text message containing a photograph of an Offer in Compromise Acceptance Notification from OTR, addressed to Toppromo, and dated September 29, 2015. Pursuant to the Offer in Compromise Acceptance Notification, OTR agreed to a $40,000 six-month payment plan in settlement of Toppromo's outstanding tax liabilities. On behalf of the OTR, the letter was signed by Public Official C as "Supervisor, Collection Division." AMIRSHAHI did not know Public Official C at that time and did not pay particular attention to Public Official C's name on the Offer in Compromise at that time. AMIRSHAHI knew that there was no legitimate basis for the reduction of Toppromo's tax liabilities by approximately $216,000.

9. AMIRSHAHI gave Person A money which AMIRSHAHI understood and believed Person A was going to use, directly, or indirectly through Person B, to pay an OTR employee in exchange for the fraudulent reduction of Toppromo's tax-related liabilities. AMIRSHAHI does not remember specifically how much money he ultimately gave Person A, but believes it was in the range of $10,000 to $20,000. AMIRSHAHI believed and understood that in exchange for the money he provided to Person A for the purpose of paying an OTR employee, an OTR employee fraudulently reduced Toppromo's tax liabilities and caused the issuance of the Offer in Compromise.

10. In early November 2015, AMIRSHAHI learned that Barcode Corporation was also going to be audited by OTR. AMIRSHAHI asked Person A to stop the Barcode Corporation audit if possible. Person A was not a co-owner of Barcode Corporation but AMIRSHAHI hoped that Person A would use his connection to the OTR employee to stop the audit. Person A said he

was working on it. In mid-November 2015, AMIRSHAHI began communicating directly with Person B for the purpose of using Person B's assistance to avoid an audit of Barcode Corporation. AMIRSHAHI ultimately failed to prevent the audit.

11. In the end of February 2016, the audit resulted in an assessment in excess of $11,000 for unpaid sales and use taxes and ballpark fees. By this time Barcode Corporation had also fallen behind with respect to its monthly sales and use tax requirements, having failed to report or pay sales and use taxes for any tax period since and including December 2015.

12. On or about March 16, 2016, AMIRSHAHI sent Person A a text message offering $10,000 in cash to pay an OTR employee for the fraudulent reduction or elimination of Barcode Corporation's tax-related liabilities. Approximately two days later, Person A sent AMIRSHAHI a text message containing a photograph of a Statement of Account from OTR indicating that Barcode Corporation had no outstanding liabilities. Person A further stated via text message that his contact was requesting payment of another $10,000 that same day. AMIRSHAHI responded that he would get the money and asked Person A when to meet. Person A indicated he was unavailable and instructed AMIRSHAHI to contact Person B directly.

13. On or about March 21, 2016, AMIRSHAHI met with Person B to complete the payment intended for the OTR employee. Soon thereafter, AMIRSHAHI began paying Person B for his assistance on a regular basis. Between March 2016 and October 2017, AMIRSHAHI made multiple payments to Person B for the purpose of paying an OTR employee to reduce or eliminate Barcode Corporation's on-going tax-related liabilities, including but not limited to its sales and use taxes liabilities for tax periods including December 2015 through May 2016, August to October 2016, December to April 2017, and June to September 2017.

14. The amount of money that AMIRSHAHI paid varied from approximately $4,000 to $12,000 per month. AMIRSHAHI knew when he was paying Person B that the money was not being applied to Barcode Corporation's tax liabilities, and was instead being paid to Person B and an OTR employee in exchange for the fraudulent reduction or elimination of Barcode Corporation's tax liabilities.

15. Initially, AMIRSHAHI did not know the OTR employee whom his payments were being used to bribe. At some point, Person B introduced AMIRSHAHI to Public Official C. Although Person B remained his primary contact, AMIRSHAHI personally discussed the scheme with Public Official C in person and on the telephone on occasion.

16. Between March 2016 and October 2017, Barcode Corporation received in excess of $590,000 in tax benefits as the result of bribes paid by AMIRSHAHI directly or indirectly to Public Official C in exchange for the fraudulent reduction or elimination of Barcode Corporation's tax-related liabilities, including audit-related liabilities, monthly sales and use tax liabilities, corporate franchise tax liabilities, penalties and interest.

17. In June 2017, 727 Concept also received in excess of $5,500 in tax benefits. AMIRSHAHI acknowledges that these benefits were the result of the same scheme, in which AMIRSHAHI paid a bribe for Public Official C to eliminate the taxes due.

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: _____
EMILY A. MILLER
D.C. Bar No. 462077
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 252-6988
Emily.Miller2@usdoj.gov

## Defendant's Acceptance

I have read this Statement of the Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

_1/17/19_
Date

_[signature]_
ARMAN H. AMIRSHAHI
Defendant

## Defense Counsel's Acknowledgment

I am Defendant Arman Amirshahi's attorney. I have reviewed every part of this Statement of the Offense with him. It accurately and completely sets forth the Statement of the Offense agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

_1/17/19_
Date

_[signature]_
DANNY ONORATO
Attorney for Defendant